IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. |
| | : | 7:09-CV-130 (HL) |
| $25,511.65 IN UNITED STATES FUNDS, | : | |
| First Named Defendant Property, | : | |
| $127,606.27 IN UNITED STATES FUNDS, | : | |
| Second Named Defendant Property. | : | |

## ORDER

This case is before the Court on the Motion to Strike (Doc. 9) and the Motion to Dismiss Complaint (Doc. 8) filed by claimants Chi Sun Royal and Willie J. Royal ("the Royals"). For the following reasons, the motions are denied.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

When deciding a motion to dismiss, a court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

On March 28, 2005, Chi Royal opened a bank account, ending in numbers 3123, with First State Bank & Trust. (Compl. ¶ 12). From June 26, 2006 through October 1, 2007, fifty-five cash deposits were made into the account, in amounts that

never exceeded $10,000. (Compl.¶ 14). Forty-one of the deposits were in amounts greater than $9,000, but less than $10,000. (Id.). On October 1, 2007, First State Bank & Trust sent a certified letter to Chi Sun Royal notifying her that it was closing the account because of federal regulation requirements. (Compl. ¶ 16).

On April 8, 2005, Chi Sun Royal opened another bank account, ending in numbers 2252, with Bemiss Citizens Bank ("BCB"). (Compl. ¶ 17). Between December 17, 2007 and May 21, 2008, eleven cash deposits were made into the account, in amounts that never exceeded $10,000. (Compl. ¶¶ 18-19). Five of those deposits were in amounts greater than $9,000, but less than $10,000. (Compl. ¶ 19). On May 29, 2008, a cashiers check, in the amount of $65,000 was issued from the BCB account. (Compl. ¶ 21).

On December 31, 2003, a bank account was opened in the name of Royal's Boutique, ending in numbers 7024, with Bank of America ("BOA"). (Compl. ¶ 23). The Royals are the only signatories on the account. (Id.). Between May 1, 2008 through April 27, 2009, at least one-hundred and five cash deposits were made into the account, in amounts that never exceeded $10,000. (Compl. ¶¶ 24-25). Seventy-six of those deposits were in an amounts greater than $9,000, but less than $10,000. (Compl. ¶ 25). On June 3, 2008, $37,318.07, was withdrawn from the account. (Compl. ¶ 27). On November 4, 2008, another $25,288.20 was withdrawn from the account. (Compl. ¶ 28).

Willie Royal opened a BOA certificate of deposit account, ending in numbers

2

8926, on June 3, 2008. (Compl. ¶ 30). The initial deposit into the account consisted of a cashier's check of $65,000 from the BCB account. (Compl. ¶¶ 21, 31). The BCB account was then closed. (Compl. ¶ 22). Also deposited was $37,318.07 from BOA checking account number 7024. (Compl. ¶ 31). A check for $106,339.48 from Coleman Talley LLP was deposited as was a check from Dover Miller Stone & Karras, P.C. in the amount $91,342.45. (Id.).

Chi Sun Royal opened a BOA of certificate of deposit account, ending in numbers 6719, on November 4, 2008. (Compl. ¶ 32). The initial deposit into BOA certificate of deposit account 6719 consisted of: (1) $300,000 from BOA certificate of deposit account 8926; (2) the interest that accrued on the BOA certificate of deposit account 8926, in the amount of $3,394.89; (3) $25,288.20 withdrawn from BOA checking account 7024; and (4) a check for $171,316.91 made payable to Chi S. Royal. (Compl. ¶ 33).

On June 3, 2009, the IRS executed a seizure warrant and seized funds from BOA checking account 7024 and BOA certificate of deposit account 6719. (Compl. ¶ 34). A total of $25,511.65 was seized from BOA checking account 7024. The funds seized from BOA checking account 7024 constitute the First Named Defendant Property. (Id.).

From BOA certificate of deposit account 6719 the IRS seized $507,393.82. (Id.). The funds seized from that account constitute the Second Named Defendant Property. (Id.). Later the Plaintiff United States ("the Government") returned a

3

portion of the funds seized from the account to the Royals. (Id. n. 3). The remaining balance of the Second Named Defendant Property is $127,606.27. (Id.)

On October 26, 2009, the Government filed its complaint for forfeiture (Doc. 1). The complaint alleges that the Royals made structured deposits into BOA checking account 7024 and BCB account 2252 with the intent to evade the currency reporting requirements in violation of 31 U.S.C. § 5324. (Compl. ¶¶ 36, 37). Pursuant to 31 U.S.C. § 5317, the Government seeks forfeiture of the Defendant Properties as traceable to a violation of the reporting statute, 31 U.S.C. § 5324. (Compl. ¶ 36).

On November 3, 2009, the Royals filed verified claims (Doc. 6,7) pursuant to Rule G(5) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims. On December 21, 2009, the Royals filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted (Doc. 8) and a motion to strike allegations in the complaint (Doc. 9). The Government filed responses to the motions on January 11, 2010. The Royals did not reply.

## II. MOTION TO STRIKE

The Royals have filed a motion to strike paragraphs in the complaint that discuss the First State Bank & Trust account (Doc. 9).

### A. Standard

Federal Rules of Civil Procedure Rule 12(f) provides that a court "may order stricken from a pleading . . . any redundant, immaterial, impertinent, or scandalous

matter." Fed. R. Civ. P. 12(f). Motions to strike are not favored by the courts. Allen v. Life Ins. Co. of North America, 267 F.R.D. 407, 410 (N.D. Ga. 2009). The motions are usually denied "unless the matter sought to be admitted has no possible relationship to the controversy, may confuse the issue, or otherwise prejudice a party." Id. (citations omitted). "A motion to strike will be granted if the disputed matter is irrelevant 'under any state of facts which could be proved in support' of the claims being advanced." Id. (citation omitted).

**B.     Discussion**

The Royals argue that the deposits made into the First State Bank & Trust account are irrelevant and impertinent to the forfeiture claims because the structured funds in the First State Bank & Trust account were not withdrawn and deposited into the Named Defendant Properties. They seek to strike the paragraphs that mention the First State Bank & Trust account, specifically ¶¶ 12-15 of the complaint.

The Government contends that the deposits made into the First State Bank & Trust account are relevant to setting a foundation for the criminal activity of the Royals from March 2005 to April 2009. It further contends that since the Royals did not seek to strike ¶ 16 from the complaint, a paragraph that alleges the bank closed the First State Bank & Trust account because of federal regulations, the Royals are not prejudiced by the paragraphs they seek to strike.

The Government's allegations regarding the First State Bank & Trust account

are arguably relevant to proving the intent of the Royals to deposit structured funds into BOA certificate of deposit account 7024 and BCB account 2252. The Court cannot say that the allegations regarding the First State Bank & Trust account are irrelevant under any state of facts that could be proved at trial. The allegations, if supported by evidence, could be admissible at trial. The Court does not find any undue prejudice in permitting the allegation to remain in the complaint when the allegations may be admissible into evidence at trial. The Royals have not articulated any unfair prejudice. Thus, the Royals' motion to strike (Doc. 9) is denied.

## III.  RULE 12(b)(6) MOTION TO DISMISS

The Royals have moved to dismiss the complaint on the basis that it fails to state a claim as to the Second Named Defendant Property.

### A.  Standard

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must provide the grounds for his entitlement to relief, sufficient to give the defendant fair notice of his claims and the grounds upon which they rest. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007). A court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). However, relying merely on conclusory allegations is not sufficient to prevent dismissal. Twombly, 550 U.S. at 555. Plaintiffs' complaint, when all allegations are taken as true, must be enough to raise a right to relief above

6

the level of speculation. Id.

Forfeiture actions in rem are also governed by the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims ("the Supplemental Rules"). See Supp. R. G(1) (setting out standards for "forfeiture action[s] in rem arising from a federal statute."). The Supplemental Rules provide that a claimant may move to dismiss the action under Rule 12(b). Supp. R. G(8)(b). The sufficiency of the complaint depends on whether the complaint "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). According to the advisory committee notes, the standard set forth at Rule G(2)(f) was intended to incorporate the standard imposed in forfeiture cases by the United States Court of Appeals for the Fourth Circuit in United States v. Mondragon, 313 F.3d 862 (4th Cir.2002). Supp. R. G advisory committee's note (2006).

At the trial of a forfeiture case the Government must prove by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C.A. § 983(c)(1). Thus, "the complaint must at bottom allege facts sufficient to support a reasonable belief that the property is subject to forfeiture." Mondragon, 313 F.3d at 865-66.

**B.    Statutory Authority for Forfeiture of Property**

A bank is required to file a Currency Transaction Report for any deposit that exceeds $10,000. 31 U.S.C. § 5313(a); 31 C.F.R. § 103.22(b)(1). The law forbids

7

a person from "attempt[ing] to cause a domestic financial institution to fail to file a report required under section 5313(a)." 31 U.S.C. § 5324(a)(1). The law criminalizes "structur[ing]. . . or attempt[ing] to structure . . . any transaction with one or more domestic financial institutions." 31 U.S.C. § 5324(a)(3).

The government may seize "[a]ny property involved in a violation of section 5313, 5316, or 5324 . . . and any property traceable to any such violation . . . ." 31 U.S.C. § 5317(c)(2).[1]

Based on these statutes, the complaint here must allege facts sufficient to support a reasonable belief that the Defendant Properties are traceable to the structuring of deposits into other accounts. In other words, the complaint must allege sufficient facts supporting a reasonable belief that the Defendant Properties are traceable to a violation of the structuring statute, § 5324.

Viewing the complaint under the Rule 12(b)(6)'s and Supplemental Rules' standards, the Court finds that the complaint is sufficient to withstand the Royals' motion to dismiss.

**C.    Discussion**

The Royals ask the Court to dismiss the complaint because according to them, the Government impermissibly seeks to extend the traceable theory of

---

[1] The procedures governing the forfeiture of property pursuant to § 5317(c)(2) are found in 18 U.S.C. § 981(a)(1)(A).

8

forfeiture to the Second Named Defendant Property.[2] In contrast, the United States argues that the complaint contains adequate facts related to the tracing of the Second Named Defendant Property.

An analogous case to this case is United States v. 4323 Bellwood Circle, Atlanta, Georgia, 680 F. Supp. 2d 1370 (N.D. Ga. 2010). In that case, the court first analyzed the same case that the Royals rely on to support their traceability position, United States v. Certain Accounts, Together with All Monies on Deposit Therein, 795 F. Supp. 391 (S.D. Fla. 1992). The court found distinctions between Certain Accounts and the facts of its case. The court ultimately concluded that the government's traceability theory upon which its complaint rested was sufficient to state a claim.

Taking the approach of the 4323 Bellwood Circle court, this Court will first address Certain Accounts and compare the facts of this case to the Certain Accounts facts. Then the Court will address 4323 Bellwood Circle and compare the facts of that case to this case. Like the decision in 4323 Bellwood Circle, this Court finds that the Government's complaint creates a reasonable belief that the Second

---

[2] The Royals also raise three other bases for dismissal of the Second Named Defendant Property: (1) the Second Named Defendant Property was not involved in the alleged structuring of deposits; (2) the Second-Named Defendant Property does not constitute fungible or substitute property; and (3) the statute of limitations for forfeiture of substitute property for the Second-Named Defendant Property has expired. Royal Br. at 10. The Government agrees that under those three bases there is no ground for forfeiture of the Second Named Defendant Property. See Res. Br. at 3. Because the Government does not contest the Royals' three arguments the Court does not address them.

Named Property is subject to forfeiture.

In Certain Accounts, the government sought forfeiture of "all monies on deposit in thirty-one bank accounts as funds involved in or traceable to money laundering." 795 F. Supp. at 392. Of the thirty-one accounts, the claimant had deposited structured funds into four accounts. Id. at 393. Out of the four accounts, checks were drawn and deposited into twenty-seven other accounts, called "indirect recipient accounts." Id. The government sought forfeiture of the entire balances of all thirty-one accounts. Id. The court dismissed the claims seeking forfeiture of the indirect receipient accounts, but found that as to the four direct recipient accounts, the complaint stated a claim. Id. at 397, 399. The court found that it was insufficient to only claim that the "taint" of the direct recipient accounts was carried over to the entire balance of the indirect recipient accounts. Id. at 397-98.

Certain Accounts is distinguishable from this case. In Certain Accounts, the government sought the forfeiture of the entire balances of the indirect recipient accounts, not just the tainted portion of the accounts. In contrast, the Government in this case seeks the forfeiture of only the tainted portion of the Second Named Defendant Property, i.e. the property that came from the accounts into which structured deposits were made.

Further, in Certain Accounts, the court found that there were no "facts concerning the balance of the account," which made it possible that "unknowing and factually innocent account holders who . . . received an allegedly tainted deposit may

10

be deprived of the use of the funds." Id. at 395. Under the government's approach, "[l]ike a contagious disease, each direct account could contaminate any account that had dealings with it." Id. at 398.

In this case, the Certain Accounts court's concern about the seizure of funds from innocent account holders is not present. The Royals are the owners of the account from which the Second Named Defendant Property was seized. The Royals are also the owners of the accounts into which the structured funds were deposited. The Government has not sought the forfeiture of funds seized from accounts of third parties.

More on point to this case is 4243 Bellwood Circle. In that case, the claimant made deposits less than $10,000 into his bank account with JP Morgan Chase Bank. 4243 Bellwood Circle, 680 F. Supp. 2d at 1371. The bank sent the claimant a letter informing him that federal law prohibits structuring deposits. Id. A few months after receiving the letter, the claimant used funds from his JP Morgan Chase bank account to purchase a house for $330,000. Id. The government sought forfeiture of the house. Id.

4243 Bellwood Circle cited United States v. Seher, 562 F.3d 1344 (11th Cir. 2009) for the standard that the property "must have more than an incidental or fortuitous connection to criminal activity" to be forfeitable. Id. at 1377 (citation and quotations omitted). The 4243 Bellwood Circle court concluded that the complaint set out with sufficient detail the deposits that constituted the unlawful structuring of

11

funds and that the complaint explained with factual specificity the link between the unlawful structuring of funds to the purchase of the house. Id. The complaint asserted that "[the claimant] stated he used funds from his business account, JP Morgan Chase account number x0468, to purchase the house in order to ultimately develop a recording studio." Id. The facts of the complaint, if true, created "more than an incidental or fortuitous connection between the Defendant Property and [the claimant's] alleged structuring of cash deposits." Id. (Citation and quotations omitted). The court denied the claimant's motion to dismiss the complaint for failure to state a claim. Id.

Like the complaint in 4243 Bellwood Circle, the complaint in this case sets forth in detail the nature of the deposits into two accounts that constituted the unlawful structuring of funds. (Compl. ¶¶18-19, 24-25). The Government then alleges in the complaint that the BOA certificate of deposit account 6719, the account from which the Second Named Defendant Property was seized, was opened in the name of Chi Sun Royal. (Compl. ¶ 32). It connects the structured deposits to the Second Named Defendant Property by explaining that the initial deposit for BOA certificate of deposit account 6719 contained funds withdrawn from the accounts that had received structured deposits. (Compl. ¶ 33).

The Royals claim that the Government "now tries to advance a three-step theory of tracing." (Res. Br. at 13). That is true; however, it is also true that the Government connects the flow of structured deposits to the Second Named

12

Defendant Property. The Government explains that structured deposits were made into BCB account 2252. It further explains that structured deposits were made into the BOA checking account 7024. $65,000 was withdrawn from BCB account 2252 and deposited into BOA certificate of deposit account 8926. $37,318.07 was withdrawn from BOA checking account 7024 and deposited into BOA certificate of deposit account 8926. These funds were then taken from BOA certificate of deposit account 8926 and deposited into BOA certificate of deposit account 6719 – the account from which the government seeks forfeiture of funds. The government seeks the forfeiture of $65,000 originating in BCB account 2252 and $37,318.07 originating from BOA checking account 7024.[3] Although these funds traveled through three accounts, it is clear to the Court that the funds originated from accounts that received structured deposits. The Court finds that the Government has shown that "more than an incidental or fortuitous connection" between the Second Named Defendant Properties and the structuring of deposits into accounts. Therefore, the Second Named Defendant Property is traceable to a violation of § 5324. The Government has stated a claim upon which relief may be granted. The Royals' motion to dismiss is denied.

---

[3] The government also seeks the forfeiture of $25,288.20 from BOA certificate of deposit account 6719. Those funds were withdrawn from BOA checking account 7024 and deposited into BOA certificate of deposit account 6719. In total, the government seeks the forfeiture of $127,606.27. All the funds are traceable to structured deposits.

## IV. CONCLUSION

The Royals' Motions to Strike (Doc. 9) and to Dismiss the Complaint (Doc. 8) are denied.

**SO ORDERED**, this the 17th day of September, 2010.

/s/ Hugh Lawson
**HUGH LAWSON, SENIOR JUDGE**

lmc